WHITE ROCK GRAVEL & SAND CO. v. IN-
TERNATIONAL & G. N. RY. CO.*
(No. 5615.)

(Court of Civil Appeals of Texas. Austin. May
3, 1916. Rehearing Denied June 28, 1916.)

1. CARRIERS ⚫≈12(1)—SWITCHING CHARGES—
ABSORPTION—ORDER.

Under a rule of the Railroad Commission
that, on all competitive business originating at
a junction point from which a line or lines of
railroad could haul shipments to destination and
make delivery to consignees whose places of de-
livery are on or reached by such lines, the other
line or lines of railroad, handling business from
such junction point to such destination for con-
signees whose places of delivery are so located,
must absorb the switching charges necessary in
making delivery, defendant railroad was not re-
quired to absorb switching charges in excess of
the minimum amount per car incurred in obtain-
ing possession of the cars at the point of origin,
over the spur track built by the plaintiff to an-
other railroad, though plaintiff, had been com-
pelled to pay a greater switching charge to such
other railroad under his contract with it ap-
proved by the Railroad Commission.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 7, 15–20; Dec. Dig. ⚫≈12(1).]

2. CARRIERS ⚫≈20(3)—SWITCHING CHARGES—
EXTORTION—ORDER.

The payment of switching charges from
plaintiff's gravel pit, in excess of a certain fig-
ure per car as fixed by an order of the Railroad
Commission in approving plaintiff's contract
with a railroad to which plaintiff had built a
spur track, to other railroads than defendant's
made no cause against the defendant for the
statutory damages for extortion or unjust dis-
crimination.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 33; Dec. Dig. ⚫≈20(3).]

3. CARRIERS ⚫≈20(10)—SWITCHING CHARGES—
PRESUMPTION.

In a suit to recover of defendant railway the
excess over the maximum sum fixed by an order
of the Railroad Commission, which plaintiff had
been compelled to pay as switching charges to
another railway, and which defendant failed to
absorb, where it was alleged that defendant ab-
sorbed the switching charges on two competing
gravel pits within the switching limits of the
city, without alleging the amount of which
charges, it would not be presumed that defend-
ant absorbed a greater amount of charges for
the competing gravel pits.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 47; Dec. Dig. ⚫≈20(10).]

Appeal from District Court, McLennan
County; Tom L. McCullough, Judge.

Suit by the White Rock Gravel & Sand
Company against the International & Great
Northern Railway Company. Judgment for
defendant on demurrer to the petition, and
plaintiff appeals. Affirmed.

Cockrell, Gray & McBride and Tarlton
Morrow, all of Dallas, and Davis & Cocke, of
Waco, for appellant. Wilson, Dabney &
King, of Houston, and Neff & Taylor, of
Waco, for appellee.

JENKINS, J. This suit was instituted by
appellant to recover of the appellee the sum
of $879, which it alleged it had been compel-
led to pay as switching charges to the Texas
Central Railroad Company and the Missouri,

Kansas & Texas Railway Company, as suc-
cessor of said Texas Central Company, and
which the appellee failed and refused to "ab-
sorb," and also for the further sum of $158,-
000, statutory damages for "extortion" and
"unjust discrimination." The appellant al-
leged that, as the successor of Alf A. Ed-
wards, it owned a gravel and sand pit, and
about January 1, 1910, Edwards built a spur
track to the same, connecting with the line
of the Texas Central Railroad Company, and
at about that time entered into a contract
with said railway company, by which it
agreed to pay for switching gravel from its
pit from $2.50 to $5.50 per car, depending
upon the number of cars handled per day;
that this contract was submitted to the
Railroad Commission and by it approved, and
on January 10, 1910, the Railroad Commis-
sion adopted the following order:

"Authority No. 61.

"Charges per car for movement over tracks of
Texas Central Railroad Company, of loaded and
empty cars between gravel pit of Alf A. Ed-
wards, located on spur connection with Texas
Central main line track at a point about 6,500
feet west of mile post 3, being within the switch-
ing limits of its Waco station, and Texas Central
connections with other lines of railways entering
the city of Waco, for the round trip empty and
loaded movement.

"Loaded cars handled per day:

| | Where Engine and Crew are Furnished by Railway Company. | Where Engine and Crew are Furnished by Other Parties. |
|---|---|---|
| If 50 cars or more... | $3 00 | $2 50 |
| If 40 and less than 50 | 3 50 | 3 00 |
| If 30 and less than 40 | 4 00 | 3 50 |
| If 20 and less than 30 | 4 50 | 4 00 |
| If 10 and less than 20 | 5 00 | 4 50 |
| If 9 and less........ | 5 50 | 5 00 |

"The charges above authorized to be open to
all shippers, or parties desiring such movement."

The petition further alleged:

That said gravel pit was within the switching
limits of the city of Waco. That there were two
other sand and gravel pits within the switching
limits of the city of Waco from which gravel
was shipped over appellee's railway, and that ap-
pellee paid the switching charges thereon. That
on the gravel switched from appellant's pit
there were switching charges of $5 and $5.50 per
car, as the case might be, describing each car and
the charges thereon; that appellee refused to
pay said switching charges, except the sum of
$2.50 on each car. That the Texas Central
Railway Company, and the Missouri, Kansas
& Texas Railway Company as its successor
demanded payment of the remainder of said
charges, and threatened to refuse to switch the
same unless paid in full, by reason of which and
in order to get its gravel transported it was
compelled to pay the remainder of said switching
charges. That appellant has called upon the ap-
pellee to reimburse it for charges so paid by it,
and that appellee has failed and refused so to do.
"That at the time the various shipments were
made by the plaintiff on the line of the defend-
ant railway, as shown by the statement hereto-
fore set out, there was in existence by due pro-
mulgation the following rule of the Railroad Com-
mission of Texas, to wit: 'When two or more
routes of railroad shall be in operation between
shipping point and point of destination, the
lowest rate applicable by any one of such routes.

⚫≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

shall be adopted by the other routes accepting freight for transportation between such points. Rates from or to intermediate points shall not be affected by this ruling.' That in addition to the foregoing rule, at the time of each of said respective shipments, as shown in the statement heretofore set out, there was also in existence, by due promulgation, the following rule of the Railroad Commission of Texas: 'It appearing that there is some misunderstanding as to authority for absorbing switching charges on competitive business, the Railroad Commission of Texas rules that on such business; that is to say, on business originating at a junction point from which a line, or lines of railroad can haul shipment to destination and make delivery to consignee, whose place of delivery is on or reached by said line, the other line or lines of railroad handling business from such junction points to such destination, for consignees whose places of delivery are located as stated, must absorb the switching charges necessary in making delivery.'"

[1] The rule of the Railroad Commission above set out is the only authority to which our attention has been called, or of which we are aware, which requires a railroad company to absorb any switching charges. It will be seen that this rule applies only to switching charges at the place of delivery; that is to say, if the appellee hauled any gravel from Waco, a junction point and delivered the same to a consignee whose place of business was reached by a competing line, by reason of which switching charges were incurred in making the delivery, the appellee would be required to absorb such switching charges.

It is not alleged that any of the cars mentioned in appellant's petition were delivered at the point of destination to a consignee whose place of business was on or was reached by another railroad, by reason of which switching charges were paid in making such delivery. The switching charges which it is alleged the appellee refused to absorb, in excess of $2.50 per car, were incurred, not at the point of destination, but at the point of origin; and not in making delivery at the point of destination, but in obtaining possession of same at the point of origin.

[2] The petition makes no cause against the appellee for extortion or for discrimination. The switching charges in excess of $2.50 charged by the Texas Central and the Missouri, Kansas & Texas were paid to those companies, and not to appellee.

[3] It is alleged that appellee absorbed the switching charges on two other gravel pits within the switching limits of the city of Waco, but the amount of such charges is not alleged. It appears that appellee did absorb $2.50 switching charges per car for appellant. This is the maximum switching charges fixed by general order of the Railroad Commission; and it will not be presumed, in the absence of an allegation to the contrary, that appellee absorbed a greater amount of charges for the competing gravel pits. The location of the other gravel pits is not made to appear, other than that they are within the switching limits of Waco. It appears from the petition herein that appellant's gravel pit is more than a mile from the three-mile post on the Texas Central Road, which would seem to account for the fact that Edwards, the predecessor of appellant, agreed to pay as high as $5.50 for switching charges, when the maximum charges, under the general order of the Railroad Commission, are only $2.50.

The court sustained appellee's general demurrer to plaintiff's petition. For the reasons stated, we do not think the court erred in so doing, and therefore the judgment of the trial court herein is affirmed.

Affirmed.